IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL HULL,

                     Petititoner,

             v.

UNITED STATES OF AMERICA,

                     Respondent.

OPINION AND  ORDER

15-cv-123-bbc
01-cr-69-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner Daniel Hull has filed a post conviction motion under 28 U.S.C. § 2255, contending that his 2002 conviction for bank robbery should be vacated because of the ineffectiveness of his trial counsel.  Although petitioner did not file his petition until 10 years after his conviction became final, he contends that it is timely under § 2255(f)(4), because he did not learn until December 12, 2014, when the government responded to his Freedom of Information Act request, that his counsel had been offered a plea agreement by the Assistant United States Attorney but had never brought it to petitioner's attention.

After reviewing the motion and the parties' briefs, I conclude that the motion must be denied.  The letter on which petitioner relies cannot be construed as a formal plea agreement from the government that counsel is constitutionally required to bring to the attention of his client.  In short, petitioner has not shown either that his trial lawyer denied him constitutionally effective representation or that his motion is timely.

1

BACKGROUND

Petitioner and Angela Giddley robbed a bank in Blooming Grove, Wisconsin on March 29, 2001.  Armed with a short barreled shotgun and what appeared to be a hand grenade, petitioner demanded and obtained money from the teller, warning her that he would use the grenade to blow up the bank if she refused.

After spending a short period of time after the robbery in the Madison, Wisconsin area, petitioner and Giddley traveled to Illinois, meeting up with a woman from Illinois whom they detained and sexually assaulted.  They were arrested in Illinois for this offense and charged in Cook County.  Under questioning by Illinois law enforcement, they confessed to the bank robbery in Wisconsin.  They remained in custody in Chicago until they were sentenced for the assault in May 2002.  In the meantime, in June 2001, they were indicted for bank robbery in the Western District of Wisconsin.

In a letter dated August 31, 2001, Assistant United States Attorney Timothy O'Shea provided discovery to the lawyers representing petitioner and Giddley on the federal bank robbery charges.  In the cover letter, he told counsel that both defendants faced bank robbery charges and that it was likely that they would be charged under 18 U.S.C. § 924(c), because they had been in possession of both a sawed off shotgun and a hand grenade, and if this happened, they could receive sentences of up to 40 years.  O'Shea passed on to counsel a suggestion from the Cook County State's Attorney that the petitioner and Giddley should try to "package their Wisconsin and Illinois charges."  Dkt. #3-1, 15-cv-123-bbc.  He concluded by saying that if he did not hear from counsel by October 17, 2001, he planned

2

to present the case to the grand jury for a superseding indictment.  Id.

Despite his statements to counsel, O'Shea did not ask the grand jury for a superseding indictment.  Instead, on February 5, 2002, he wrote counsel again, summarizing the events to date and declining an apparent offer from the defendants to be debriefed by the government in return for a long "suspended sentence."  Dkt. #84-1, 01-cr-69-bbc, at 2.  He told counsel in his letter that the amount of time the court might impose "isn't going down, it's going up, how much is the question," id., because he anticipated that the grand jury would add charges under § 924(c) for the hand grenade and shotgun.  He added, "[p]lease note that I do not oppose Hull and Giddley pleading guilty to federal bank robbery and § 924(c) charges and recommending to the District Court that their state sentences run concurrently."  Id.  Petitioner says that his court-appointed counsel never made him aware of this letter.

At some time before October 2002, the government learned that the grenade was a dummy version.  On October 3, 2002, O'Shea sent petitioner's counsel a four-page proposed plea agreement, dkt. #3-2, 15-cv-123-bbc, that would require petitioner to plead guilty to count one of the indictment returned by the grand jury on June 27, 2002.  (Presumably, O'Shea meant to say June 27, 2001, which is the only date on which the grand jury returned an indictment in this case.)  The plea agreement would also require petitioner to plead guilty to an information charging a violation of § 924(c), but carrying a maximum penalty of not less than five years, to run consecutively to any sentence imposed for the bank robbery.  The proposal included nothing about a recommendation to run defendant's sentence

3

concurrently with his Illinois sentence.

Petitioner signed the plea agreement on October 28, 2002, the same day he entered his plea of guilty to count one of the indictment and the information. He was sentenced on December 13, 2002, to a term of 188 months on count one, with a consecutive sentence under § 924(c)(1)(A)(i) of five years for carrying a firearm. As imposed, both sentences were to run consecutively to the Illinois sentence.

OPINION

Petitioner filed this motion on February 26, 2015, almost ten years after the expiration of the usual time for filing a motion for post conviction relief under 28 U.S.C. § 2255. (His appeal was dismissed by the court of appeals on December 12, 2003; his conviction became final 90 days later when his time for filing a petition for a writ of certiorari with the Supreme Court expired and his one-year limitation period for filing a post conviction motion expired one year later, on March 12, 2005.) However, § 2255(f)(4) allows a petitioner to challenge his conviction one year after the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" and petitioner alleged in his motion that he did not know about the February 5, 2002 letter from the Assistant United States Attorney until December 12, 2014, when he received a response to a Freedom of Information Act request he had filed. He attached a copy of the February 5th letter to his motion.

For the purpose of deciding petitioner's motion, I will assume that petitioner will be

able to prove he never saw the February 5th letter until his FOIA request was answered and turn instead to the question whether he can prove that the letter amounted to a formal plea offer.  If he cannot, it is irrelevant when he first saw it.

A defendant has no constitutional right to a plea offer from the government. Weatherford v. Bursey, 429 U.S. 545, 560-61 (1977).  However, a defendant does have a Sixth Amendment right to effective assistance of counsel during the plea negotiation process. McMann v. Richardson, 397 U.S. 759, 771 (1970).  The Supreme Court has held that counsel's alleged failure to bring a plea offer to his client's attention can constitute constitutional ineffectiveness of counsel.  Missouri v. Frye, 132 S. Ct. 1339, 1408 (2012). (("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.").  As the Court made clear in Frye, that duty applies only when the plea offer is a "formal one." The Court has never held that defense counsel can be found constitutionally ineffective for failing to tell their clients about informal discussions they have with the government about possible plea offers.

Although petitioner argues that the February 5th letter from Assistant United States Attorney O'Shea was a formal plea offer, he has not shown that it was.  This is apparent from O'Shea's statement that he was *willing to discuss a resolution* of the charges.  That is an opening gambit, not an actual offer, as are his statements in the same letter that he anticipated additional charges from the grand jury, carrying consecutive prison terms of 10 years and 30 years.  Under Frye, petitioner's counsel had no obligation to tell petitioner about O'Shea's

statements in his February 2002 letter that he was willing to discuss resolution of the charges with defense counsel, that he would not oppose petitioner's pleading guilty to the federal bank robbery and § 924(c) charges or that he would be open to a recommendation " to the District Court that [petitioner's] state sentence[] run concurrently."  Dkt. #84-1.  (It is not clear whether O'Shea was saying he would not oppose a recommendation by petitioner for concurrent sentences or whether he was suggesting that he would make such a recommendation on behalf of the government.)

If there were any question about the informal nature of the February 2002 letter, it would be resolved by comparing the letter to the formal plea offer that petitioner accepted eight months later, in October 2002.  Dkt. #3-2, 15–cv-123-bbc.  In that offer, the government set out the precise terms of the agreement, including its own agreement to a much-reduced term of consecutive imprisonment for the § 924(c) charge.  The offer covers the maximum penalties; petitioner's agreement to cooperate; the concomitant agreement by the government to file a motion under Fed. R. Crim. P. 35 or U.S.S.G. § 5K1.1 if petitioner were to provide substantial assistance; restitution; financial disclosure; challenges to the guidelines; reservation of the right of both parties to appeal the sentence imposed; and the non-binding nature of any discussion of the guidelines by the parties.  Id.  It also includes a paragraph stating that all plea agreements must be approved by the United States Attorney and adds that the agreement has not yet received approval, so that final acceptance is conditioned upon the United States Attorney's approval.  Id. at 5.  (It is worth noting that this offer reflects trial counsel's negotiating skills in persuading the government to agree to

6

charge petitioner with carrying a "firearm" so that he would be subject to a five-year minimum consecutive sentence for the § 924(c) charge, rather than the 10-year minimum he would have faced if the government had charged him with possessing a short-barreled shotgun.)

Petitioner takes issue with this proposition, arguing in his traverse, dkt. #10, that "[i]t is hard to comprehend [how] Hull <u>could have conferred with his defense counsel</u> prior to the 'plea letter' (of 10/3/2002,) and thereafter present the matter before the Court during the plea hearing or at sentencing WHEN HIS ATTORNEY NEVER DISCLOSED THE February 5, 2002 LETTER TO HULL FOR CONSIDERATIONS."  Petitioner seems to be saying that because he never saw the February 5th letter, he was unable to present to the court the full story of the plea negotiation process.  This may well be true, but the Constitution does not afford him the right to give the court the full story.  The holding of <u>Frye</u> is that a defendant has a right to see and discuss with counsel every *formal* plea offer, not that he has a right to see or know of every communication between his counsel and the prosecution.  Moreover, petitioner has not shown how the alleged withholding of the February 5th letter prejudiced him.

Petitioner's claim fails for another reason.  He has not shown that the offer he accepted was worse than the "formal offer" in the February 5th offer.  In a companion case to <u>Frye</u>, <u>Lafler v. Cooper</u>, 132 S. Ct. 1376 (2012), the Supreme Court held that a defendant cannot prevail on a claim that his counsel never showed him a plea offer from the government unless he can show that the conviction or sentence or both would have been less severe under

the terms of the unseen offer than under the terms of the offer he accepted.  Id. at 1385.  In the February 5th letter, O'Shea indicated that he would not oppose petitioner's entry of a plea of guilty to federal bank robbery and § 924(c) charges and that he would recommend that petitioner's sentence run concurrently with his state sentence.  Had petitioner entered a plea to those charges, he could have received a sentence of 20 years for the robbery plus a consecutive sentence of ten years for carrying a sawed-off shotgun.  Under the agreement he signed, his maximum sentence was 25 years, because the government reduced the charge to carrying a firearm, rather than carrying a sawed-off shotgun.

One separate point.  In his brief, the Assistant United States Attorney pointed out that it is the United States Attorney's long standing policy to require that written plea letters be approved by the United States Attorney and that the United States Attorney had not approved the February 5th letter.  In response, petitioner argued that the February 5th letter was a formal plea offer, because it contained the name and title of the United States Attorney above the Assistant United States Attorney's signature, which showed that it had been approved in advance by the United States Attorney.  It is common practice that letters written by any Assistant United States Attorney are sent out with the name and title of the United States Attorney above the Assistant United States Attorney's signature.  This does not signify that the United States Attorney has given his approval to the specific contents of the letter, but merely connotes that the signer is a representative of the office.  More than the routine use of the name of the United States Attorney is necessary to show that a plea offer has been approved.  In fact, the formal plea agreement that O'Shea proposed to defendant included a

statement that "[a]ll plea agreements are required to be approved by the United States Attorney," and that because the plea agreement in this case had not been preapproved, its final acceptance was conditioned upon that approval.  Dkt. #3-2, 15-cv-123-bbc, at 5.

No reasonable person reading the February 5, 2002 letter would understand the statement by the Assistant United States Attorney that he would "not oppose Hull and Giddley pleading guilty . . . and recommending to the District Court that their state sentences run concurrently" as a formal plea agreement.  Frye does not require defense counsel to pass on informal discussions with the prosecution about disposition; its holding extends only to formal plea agreements.  If, as petitioner alleges, his counsel did not inform him of the February 5th letter, he did not violate his constitutional duty of effective representation.

It is unnecessary to discuss petitioner's argument that his § 2255 motion is timely because he could not have discovered the factual basis for his motion until his Freedom of Information Act request was granted.  The granting of that request did not result in the discovery of any documents that entitle petitioner to post conviction relief.

Petitioner's motion for post conviction relief must be denied as both untimely and unsupported by the facts and law.  He has not shown that he was denied the effective assistance of counsel when his court-appointed attorney failed to tell him that the Assistant United States Attorney had written that he would not be opposed to a disposition of the federal prosecution that would result in concurrent state and federal sentences.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must

issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Defendant has not made a substantial showing of a denial of a constitutional right so no certificate will issue.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one.

Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that petitioner Daniel Hull's motion for post conviction relief under 28 U.S.C. § 2255 is DENIED.  Further, it is ordered that no certificate of appealability shall issue.

10

Defendant may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 18th day of August, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11